IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| GEORGE WALTER KIRKLAND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 620-092 |
| | ) | |
| LAWRENCE WHITTINGTON, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Wilcox State Prison in Abbeyville, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion to amend be **DENIED**, (doc. no. 19), the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

Consequent to the shooting death of Petitioner's wife, the Superior Court of Emanuel County, Georgia, indicted Petitioner on September 19, 2012, for one count each of malice murder, felony murder, and aggravated assault, as well as three counts of possession of a

---

[1]The Court **DIRECTS** the **CLERK** to update the docket consistent with the above caption because the proper Respondent is Lawrence Whittington, the Warden at Petitioner's current place of incarceration, Wilcox State Prison. See Rule 2(a) of the Rules Governing § 2254 Cases; see also www.dcor.state.ga.us (follow "About GDC," "Divisions," and "Facilities" hyperlinks; then search "Wilcox State Prison") (last visited Jan. 25, 2021).

firearm during the commission of a crime.  (Doc. no. 11-9, p. 53; doc. no. 11-10, pp. 54-56.)[2]

On October 3, 2013, Petitioner pled guilty, pursuant to a plea agreement negotiated by retained

attorney Stephen Knights, Jr., to a reduced charge of voluntary manslaughter and to one count

of possession of a firearm during the commission of a crime.  (Doc. no. 11-9, pp. 53, 213-22.)

All other charges were dismissed, and Petitioner was sentenced, as contemplated by the plea

agreement, to twenty years in prison for the manslaughter conviction and three years in prison,

followed by two years of probation, for the firearm possession charge.  (Id.)  Petitioner did not

timely appeal the conviction or sentence but did file motions for an out-ot-time appeal and to

withdraw his guilty plea on April 14, 2014.  (Doc. no. 11-1, p. 2; doc. no. 11-9, pp. 246-47.)

The motions were denied on May 19, 2014.  (Doc. no. 11-10, pp. 6-7.)  Petitioner filed

numerous other unsuccessful motions, including another motion for out-of-time appeal, an

extraordinary motion for new trial, and motions to modify his sentence and vacate judgment.

(Doc. no. 11-9, pp. 223-24, 227-28, 230-33, 236-38; doc. no. 11-10, pp. 4-15.)

Petitioner filed a state habeas corpus petition *pro se* on September 8, 2014, and

subsequently amended his petition three times, the last of which occurred on May 17, 2018.

(Doc. no. 11-1, p. 1; doc. nos. 11-2, 11-3, 11-4.)  The Superior Court of Wheeler County,

Georgia, conducted evidentiary hearings on Petitioner's claims on May 17, September 5, and

October 1, 2018, issuing an order denying Petitioner's ten claims in an order filed on April 11,

2019.   (Doc. no. 11-5, pp. 1-2, 13. )  The Georgia Supreme Court denied Petitioner's request

---

[2] For ease of reference, the Court cites to the document and page numbers assigned by the
Court's electronic filing system rather than any citations assigned in the state court proceedings.

2

for a certificate of probable cause to appeal (CPC) on December 23, 2019.  (Doc. nos. 11-6, 11-7.)

Petitioner then timely filed the above-captioned § 2254 petition *pro se* in the Middle District of Georgia, alleging in one claim with three subparts that Mr. Knights provided ineffective assistance of counsel by:[3]

> (1)  failing to have Petitioner evaluated to determine if he was competent to stand trial;
>
> (2)  threatening Petitioner he could receive a life sentence without parole without informing him he could receive a lesser sentence at trial; and
>
> (3)  lying to Petitioner about the plea agreement.

(See generally doc. no. 1.)  United States Magistrate Judge Stephen Hyles entered an order on March 8, 2020, instructing Petitioner to "amend his petition to include every unalleged possible constitutional error or deprivation entitling him" to relief, and if Petitioner failed to file an amendment within those thirty days, he would "be presumed to have deliberately waived his right to complaint of any constitutional errors or deprivations other than those set forth in his initial habeas petition."  (Doc. no. 4, p. 1.)  Petitioner did not file anything within the allotted thirty days, but on June 16, 2020, he filed a "Brief in Support of His Probable Cause to Appeal Writ of Habeas Corpus, which is actually a copy of the application for a CPC he filed with the Georgia Supreme Court on May 6, 2019.  (Doc. no. 13.)  The CPC brief does not draw any correlation to the ineffective assistance claims raised in the federal petition.

---

[3]For ease of reference, the Court refers to the subparts of the one ineffective assistance claim as Grounds One through Three.

3

Judge Hyles recommended denying the petition in its entirety on June 23, 2020.[4]  (Doc. no. 14.)  Upon consideration of the recommendation, Chief United States District Judge Marc T. Treadwell requested briefing addressing that court's jurisdiction to hear the case.  (Doc. no. 16.)  Respondent contended jurisdiction properly lies in the Southern District of Georgia, (doc. no. 17), but Petitioner requested the case stay in the Middle District, (doc. no. 22), and filed a motion to amend his petition to add two new claims:

(1)  Mr. Knights provided ineffective assistance by failing to challenge Petitioner's firearm charge and sentence because Petitioner had a valid license to carry a firearm; and

(2)  Mr. Knights provided ineffective assistance because he told Petitioner he was not eligible for a sentence under Georgia's First Offender Act, O.C.G.A. § 42-8-60.

(Doc. no. 19.)  Respondent filed opposition to the motion to amend.  (Doc. no. 20.)

Judge Hyles withdrew his initial recommendation and, on August 24, 2020, recommended transferring the case to this District.  (Doc. no. 18.)  Judge Treadwell adopted the August 24th recommendation and transferred the case, including the pending motion to amend, to the Southern District of Georgia.  (Doc. no. 25.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

---

[4]The Court broadly utilizes the information in Judge Hyles's recommendation that is applicable to this Court's own analysis.

respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court decision was

"objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016)

(citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.    DISCUSSION

### A.    Whether Applying AEDPA Deference to the Ineffective Assistance Claims Rejected by the State Courts, or Under *De Novo* Review, Federal Habeas Relief Is Not Warranted

#### 1.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

 Ineffective assistance of counsel claims are subject to the two-part test enunciated in

Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show

that "counsel's representation fell below an objective standard of reasonableness." Strickland,

466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of

competence, and the court must give significant deference to the attorney's decisions." Hagins

v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to

a "heavy measure of deference." Strickland, 466 U.S. at 691.  To show that an attorney's

choice of strategy is unreasonable, a petitioner must show that no competent counsel would

have made such a choice. Strickland, 466 U.S. at 690; Adams v. Wainwright, 709 F.2d 1443,

1445 (11th Cir. 1983) (*per curiam*) ("Even if in retrospect the strategy appears to have been

wrong, the decision will be held ineffective only if it was so patently unreasonable that no

competent attorney would have chosen it." (citations omitted)).

"Given the strong presumption in favor of competence, the petitioner's burden of

persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head,

261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what

the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  <u>Ward v. Hall</u>, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Strickland</u>, 466 U.S. at 697; <u>see</u> <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of <u>Strickland</u>, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989).

Furthermore, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y,

<u>Fla. Dep't of Corr.</u>, 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 578 U.S.-, 136 S. Ct. 1149, 1151 (U.S. 2016) (<i>per curiam</i>) (internal quotations and citations omitted). To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." <u>Id.</u> Put another way, "[t]he <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial." <u>Richter</u>, 562 U.S. at 105; <u>see also</u> <u>Sexton v. Beaudreaux</u>, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); <u>Woods</u>, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

The purpose of the review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"

<u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).  That is, <u>Strickland</u> requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.  <u>Khan v. United States</u>, 928 F.3d 1264, 1273 (11th Cir.) (citation omitted), *cert. dismissed*, 140 S. Ct. 339 (U.S. Nov. 5, 2019).  As recently emphasized by the Eleventh Circuit:

> [D]eferential review under <u>Strickland</u> does not ask whether counsel could possibly or ideally have been more effective.  "The test for ineffectiveness is not whether counsel could have done more."  We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our hindsight.   Rather, <u>Strickland</u> asks only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance."

<u>Jenkins v. Comm'r, Ala. Dep't of Corr.</u>, 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal citations omitted).

### 2.      Pursuant to Application of <u>Strickland</u>, Petitioner Is Not Entitled to Relief on Ground One

In Ground One, Petitioner argues Mr. Knights provided ineffective assistance by failing to have Petitioner evaluated to determine if he was competent to stand trial.  In his state habeas proceedings, Petitioner raised two distinct claims concerning competence.  First, he claimed Mr. Knights used the motion for a second evaluation as a pretext to get him to court on October 3, 2013, the date he pled guilty.  (Doc. no. 11-1, p. 5; doc. no. 11-9, pp. 27-28; doc. no. 28, p. 25.)  Second, Petitioner claimed Mr. Knights should have obtained a second competency evaluation prior to entry of the guilty plea.  (Doc. no. 11-11, pp. 19-22.)  It appears the state

habeas judge may have only considered the first argument because the final order does not identify or discuss the standard for ineffectiveness claims based on failing to pursue claims of incompetency.  (See doc. no. 11-5.)

Nevertheless, the incompetency claim has likely been considered on the merits because Petitioner appears to have asserted the issue in his application for a CPC, (doc. no. 11-6, p. 14), and the CPC application was summarily denied, (doc. no. 11-7).  See Hittson v. GDCP Warden, 759 F.3d 1210, 1231-32 (11th Cir. 2014) (explaining summary denial of CPC application in Georgia constitutes decision on the merits of any argument raised in application).  In any event, the Court need not make a final determination on whether this incompetency claim was "inadvertently overlooked in state court," which would rebut the presumption that this federal claim was decided on the merits.  Bester v. Warden, 836 F.3d 1331, 1336 (11th Cir. 2016) (citation omitted).  This is so because, as discussed below, Petitioner is not entitled to relief, even under de novo review.  Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review."); see also Williams v. Alabama, 791 F.3d 1267, 1273 (11th Cir. 2015) ("[R]esting between AEDPA deference and procedural default is a third path.  If the state court did not reach the merits of a petitioner's claim based on some ground that is not adequate to bar federal review, we must review the claim de novo." (citation omitted)).

### a.   Background

Mr. Knights graduated from the Western Michigan School of Law in 2005 and was admitted to the Georgia Bar in 2006.  (Doc. no. 11-9, p. 11.)  Mr. Knights worked as an assistant solicitor general and district attorney for approximately six years before joining the Knights Law Firm in 2012, where he specialized in criminal felony cases and personal injury cases.  (Id. at 11-12.)  Mr. Knights was also appointed as a magistrate court judge and reported experience trying serious felony cases, including murders, on both the prosecution and defense side.  (Id. at 12.)

Petitioner retained Mr. Knights just days after arraignment, and after speaking on the phone, the two met in person on November 2, 2012.  (Id. at 13-14, 97.)  Mr. Knights examined the evidence, including spending hours at the location of the shooting and holding detailed discussions with Petitioner about his version of events.  (Id. at 13-14.)  Having personally reviewed the crime scene and discovery, as well as interviewing Petitioner, Mr. Knights believed he had thoroughly investigated the case.  (Id. at 14-15.)  He reviewed the elements of each charge with Petitioner, and Mr. Knights believed the evidence and Petitioner's version of events supported a plea to voluntary manslaughter.  (Id. at 15-16.)  Thus, Mr. Knights reached a plea agreement with the State for a sentence of twenty years on the voluntary manslaughter and five years on one of three firearms charges.  (Id. at 17-18.)

Mr. Knights requested a mental evaluation for Petitioner, and although the resulting report from Dr. Valerie Ross at East Central Regional Hospital is not in the record, Mr. Knights testified it concluded Petitioner was competent.  (Id. at 21.)  Mr. Knights did, however, request a motions hearing to so that he could seek a follow-up evaluation by Dr. Ross to clarify her

statement that Petitioner was exaggerating any impairment he may have but there was no apparent reason he would be incompetent.  (Id. at 22, 25.)  In the motion requesting a second evaluation, Mr. Knights stated Dr. Ross's finding were "inconclusive," and he argued Petitioner should be re-evaluated in an effort to reach, if possible, "a more conclusive finding." (Id. at 200.) However, on the day Mr. Knights and Petitioner showed up for the motions hearing, Petitioner decided to enter a guilty plea.  (Id. at 23, 27.)

Mr. Knights denied any prior knowledge Petitioner would plead guilty the day they appeared for a motions hearing.  (Id. at 28.)  Rather, Petitioner came to Mr. Knights that day indicating he wanted to plead guilty.  (Id. at 23.)  Mr. Knights spent the entire morning going over the plea offer from the prosecutor, reviewing maximum and minimum ranges of sentences on the charges pending against him, as well as the constitutional rights he would be waiving, and Mr. Knights was satisfied Petitioner understood those rights and what was going on that day.  (Id. at 23-25; doc. no. 11-11, pp. 20, 22.)  Petitioner was "very involved with everything that was happening," so much so that he wanted Mr. Knights to be sure he would be allowed to drive his car away from court that day and turn himself in at a later date.  (Id. at 25-26.) Petitioner also certified in writing he understood the charges he faced, the range of potential sentencing, the rights he was waiving by pleading guilty, and confirmed he had time to confer, and was satisfied, with his attorney and the services Mr. Knights had provided.  (Id. at 209.)

Dr. Ross's testimony at the state habeas hearing confirmed she felt Petitioner was "exaggerating" his memory impairment, and she saw no apparent mental health issue during her one interview with Petitioner.  (Doc. no. 11-11, p. 15.)  Petitioner reported several "vague symptoms of feeling like he needed treatment," but he had never undergone mental health

14

treatment, and she testified his responses suggested he was not putting forth effort to learn and retain even basic information about the criminal justice system.  (Id. at 14-15.)  While Dr. Ross had no "reason to think [Petitioner] wasn't competent," she explained she simply lacked sufficient information, such as collateral information from jail staff,[5] to offer a conclusive opinion on competency.  (Id. at 13, 15.)

### b.    Analysis

Petitioner claims Mr. Knights provided ineffective assistance by failing to have Petitioner evaluated to determine if he was competent to stand trial.  Assuming, without deciding, Petitioner could show deficient performance, he cannot satisfy the two-prong Strickland test because he cannot show prejudice.  To show prejudice, Petitioner would have to show a reasonable probability of a different outcome of the proceedings but for Mr. Knights' alleged deficient performance.  See Strickland, 466 U.S. at 694.  Stated otherwise, Petitioner must "show that there was a reasonable probability that he would have received a competency hearing *and* been found incompetent had counsel requested the hearing."  Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 479 (11th Cir. 2012).

As detailed above, Dr. Ross testified she concluded Petitioner was exaggerating his impairments during their one interview, during which  there was no mental health issue apparent.  (Doc. no. 11-11, p. 15.)    Although she simply did not have enough information from one interview to conclusively offer an opinion, she had no "reason to think [Petitioner] wasn't competent."  (Id. at 13, 15.)  Petitioner argues he was evaluated in prison after his

---

[5]Petitioner was on bond at the time Dr. Ross conducted her interview.  (Doc. no. 11-11, p. 15.)

conviction and found incompetent to stand trial, (doc. no. 1, p. 5), but the prison mental health records submitted do not support that contention, (see generally doc. no. 28, pp. 31-103.)  The records do not show any evaluation of competency to stand trial, and while they show diagnoses of anxiety, depression, and features of post-traumatic stress disorder, they also memorialize organized, logical, and coherent thought processes.  (Id. at 37, 40- 41, 45, 49-51, 71, 78, 82, 91, 95.)  The records also reveal Petitioner's reports of discontinuing his medicine and requesting removal from the mental health case load, which resulted in dismissal from the clinic.  (Id. at 40-41, 48, 66, 95.)  There is nothing to support a conclusion Petitioner would have been found incompetent at any initial or subsequent hearing such that he would be able to satisfy the prejudice prong of Strickland.

Moreover, even if Petitioner had shown he suffered from some type of mental disability or condition at the time he entered his guilty plea on October 3, 2013, any such showing does not demand a finding of incompetence.  Bolius v. Wainwright, 597 F.2d 986, 990 (5th Cir. 1979)[6] ("[T]he mere presence of mental illness or other mental disability at the time [the petitioner] entered his plea does not necessarily mean that he was incompetent to plead . . . . The mental illness or disability must have been so debilitating that [the petitioner] was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings." (citations omitted)).

---

[6]The Eleventh Circuit adopted as binding precedent all opinions handed down by the former Fifth Circuit prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Finally, the transcript of the plea proceedings confirms Petitioner was competent to enter a guilty plea.  (See doc. no. 11-10, pp. 42-65.)  When specifically asked by the judge, Petitioner denied there was anything interfering with his ability to understand the court proceedings or his ability to make decisions about the charges he faced.  (Id. at 48.)  Moreover, the judge who ordered the first mental evaluation, received Dr. Ross's first report, and had been scheduled to hear the request for a second evaluation on the day Petitioner decided to plead guilty, confirmed Petitioner's guilty plea was entered "freely, understandingly, and voluntarily."  (Doc. no. 11-9, pp. 190, 210; doc. no. 11-10, p. 61.)  The judge received Petitioner's written confirmation he understood the charges he faced, the range of potential sentencing, and the rights he was waiving by pleading guilty, (doc. no. 11-9, p. 209), and the judge subsequently ruled multiple times Petitioner entered a knowing and voluntary guilty plea in written orders denying Petitioner's various motions to modify his sentence and to file an out-of-time appeal.  (Doc. no. 9, pp. 237-38; doc. no. 11-10, pp. 6-7, 12.)  Moreover, the trial judge was sufficiently comfortable with Petitioner's ability to understand the guilty plea proceedings to accommodate his request to self-report the next day to start serving his sentence.  (Doc. no. 11-10, p. 63.)

In sum, nothing establishes Petitioner satisfies the Strickland prejudice prong because he cannot show a reasonable probability that he would have been found incompetent.  Ground One forms no basis for relief.

### 3. Pursuant to Application of <u>Strickland</u>, Petitioner Is Not Entitled to Relief on Ground Two

In Ground Two, Petitioner argues Mr. Knights provided ineffective assistance by threatening a sentence of life without parole to pressure Petitioner to plead guilty, and Petitioner did not understand he could get a lesser sentence if he went to trial.  (Doc. no. 1, p. 5.)  Stated otherwise, it appears Petitioner argues Mr. Knights did not inform him of the potential range of sentences he faced if had been convicted at a trial.  Similar to Ground One, it is not clear Petitioner raised this specific claim in state court, although he did argue his plea "was entered under threats of worse punishment" and Mr. Knights provided ineffective assistance by misleading him "about receiving a more favorable sentence." (Doc. no. 11-5, pp. 1-2; doc. no. 11-9, pp. 31-32.)

In his answer, Respondent specifically notes he does not waive exhaustion but also states he "does not contest exhaustion in this case."  (Doc. no. 7, p. 2.)  In any event, Respondent does not argue Ground Two should be dismissed for lack of exhaustion.  The Court need not determine the exhaustion issue because, as discussed below, Petitioner is not entitled to relief, even under *de novo* review.  See <u>Berghuis</u>, 560 U.S. at 390; <u>see also</u> <u>Williams</u>, 791 F.3d at 1273.

### a. Background

Mr. Knights testified at the state habeas hearing he spent the entire morning the day Petitioner entered his guilty plea going over with him the plea offer from the prosecutor and reviewing maximum and minimum ranges of sentences on the charges pending against him. (Doc. no. 11-9, pp. 23-25; doc. no. 11-11, pp. 20, 22.)  Mr. Knights also testified he was

realistic with Petitioner about possible outcomes, including the chance of a sentence of life plus thirty-five years, a reduction in charges to voluntary manslaughter, and proceeding to trial. (Doc. no. 11-9, p. 21.)  Moreover, prior to accepting Petitioner's plea, the judge informed Petitioner the maximum sentence he faced was life without parole plus thirty-five years, and the minimum sentence was one year.  (Doc. no. 11-10, p. 49.)  Petitioner confirmed orally and in writing that he understood the range of sentences, including that there could be suspension or probation of his sentence.  (Id.; doc. no. 11-9, p. 209.)

### b.  Analysis

Petitioner claims Mr. Knights provided ineffective assistance by threatening him that he could receive a life sentence without parole and  not informing him he could receive a lesser sentence at trial.  To succeed on an ineffective assistance claim regarding a guilty plea, Petitioner must show there is a reasonable probability but for Mr. Knights' alleged errors, Petitioner would not have pleaded guilty and would have insisted on going to trial.  See Hill, 474 U.S. at 59.  Petitioner must prove "serious derelictions" in the advice regarding the plea. Stano, 921 F.2d at 1150-51.  Petitioner has not met his burden.

First, Mr. Knights testified he reviewed the maximum and minimum ranges of sentences with Petitioner prior to entry of the guilty plea.  (Doc. no. 11-9, pp. 23-25.)  Petitioner told the judge, under oath, no one had threatened or coerced to enter a guilty plea.  (Doc. no. 11-10, p. 57.)  As the habeas court correctly noted, the possibility of a greater sentence at trial is not a threat that renders a guilty plea invalid.  (Doc. no. 11-5, p. 4); Roberts v. United States, 472 F.2d 1195, 1196 (5th Cir. 1973) (per curiam) ("A guilty plea entered with the advice of counsel is not rendered invalid if made to avoid a harsher penalty." (citations omitted)).

Second, the trial judge advised Petitioner during the plea colloquy of the range of sentences, including that he could receive as little as one year if convicted at trial.[7]  (Doc. no. 11-10, p. 49.)  Petitioner confirmed he understood the range of sentences, both orally and in writing. (Id.; doc. no. 11-9, p. 209.)

In sum, there is nothing to establish Petitioner satisfies the two-part <u>Strickland</u> test. Even if Petitioner had established deficient performance by Mr. Knights, which he has not, Petitioner has not satisfied the prejudice prong because he has not established a reasonable probability he would not have pleaded guilty and would have insisted on going to trial.  Ground Two forms no basis for relief.

### 4.      The State Habeas Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claims in Ground Three Was Not Objectively Unreasonable

In Ground Three, Petitioner asserts Mr. Knights "lied about plea deal."  (Doc. no. 1, p. 5.)  Although the petition is bereft of detail, the Court presumes Petitioner raises the same two arguments he pursued in his state habeas petition that Mr. Knights:  (a) lied to Petitioner about the purpose of the October 3, 2013 hearing; and (b) misled him about the ability to obtain a more favorable plea offer from the State.   (Doc. no. 11-5, pp. 4-6.)  As explained in detail below, the state habeas court rejected these claims.  The Georgia Supreme Court denied the request for a CPC in a two-sentence order:  "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby

---

[7]A murder conviction in Georgia in a non-death penalty case carries a sentence of life or life without parole.  O.C.G.A. § 16-5-1(e)(1).  Accordingly,  a one-year sentence would have required a conviction on only the aggravated assault count or the lesser included offense of voluntary manslaughter.  O.C.G.A. §§ 16-5-2(b); 16-5-21(b).

denied.  All the Justices concur." (Doc. no. 11-7.)  Because the state supreme court decision did not come accompanied with reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable. Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018).  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance claims concerning "lies" about the plea agreement in a reasoned opinion.  See Wilson, 138 S. Ct. at 1192.  As discussed below, the state habeas court correctly identified and applied the Strickland analysis to determine Petitioner did not show counsel's performance was objectively unreasonable or that he was prejudiced by counsel's performance.  (See doc. no. 11-5.)

> **a.    The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim Concerning the Purpose of the October 3, 2013 Hearing Was Not Objectively Unreasonable**

In Ground Three(a), Petitioner argues he received ineffective assistance because Mr. Knights lied to him about the purpose of the October 3, 2013 hearing.  Petitioner maintains that when he arrived at the courthouse for a hearing on the motion for a second mental evaluation, Mr. Knights instead "pushed" and "rushed" him into pleading guilty.  (Doc. no. 28, p. 25.)  Petitioner further argues he would not have come to court on October 3, 2013, if

he had known the purpose was for entry of a guilty plea.  (Doc. no. 11-9, pp. 27-28.)  The state

habeas court found this claim lacked merit under <u>Strickland</u>, concluding Petitioner had not

shown, as required by <u>Hill</u>, he would not have pleaded guilty and insisted on going to trial but

for the actions of Mr. Knights.  (Doc. no. 11-5, pp. 5-6.)

### i.  Background

As discussed in detail above, Mr. Knights denied any prior knowledge Petitioner would

plead guilty the day they appeared for a motions hearing that had been scheduled to consider

a motion for a second mental evaluation to gain clarity on the initial competency report

provided by Dr. Ross.  (Doc. no. 11-9, pp. 28, 37.)  Mr. Knights also testified he had no

knowledge whether Petitioner would show up on October 3rd, but (1) the hearing had been

scheduled for the competency evaluation motion; (2) Petitioner gave no indication he would

not show up; and (3) and if Petitioner had not shown up for a scheduled court proceeding, a

bench warrant would be issued.  (<u>Id.</u> at 37.)

Furthermore, Mr. Knights spent the entire morning going over the plea offer from the

prosecutor, reviewing maximum and minimum ranges of sentences on the charges pending

against him, as well as the constitutional rights he would be waiving by reading each one to

Petitioner, and Mr. Knights was satisfied Petitioner understood those rights and what was

going on that day.  (<u>Id.</u> at 23-25; doc. no. 11-11, pp. 20, 22.)  Petitioner was "very involved

with everything that was happening." (Doc. no. 11-9, p. 25.) Petitioner also certified in writing

he understood the charges he faced, the range of potential sentences, the rights he was waiving

by pleading guilty, and confirming he had time to confer, and was satisfied, with his attorney

and the services Mr. Knights had provided.  (<u>Id.</u> at 209.)

### ii.        Analysis

The state habeas court determined Petitioner did not satisfy the <u>Strickland</u> standard because he could establish neither deficient performance by Mr. Knights, nor prejudice under <u>Hill</u> by showing he would have rejected the plea offer and insisted on trial.  (Doc. no. 11-5, pp. 4-6.)  Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement."  <u>Woods</u>, 136 S. Ct. at 1151.

Petitioner's argument that counsel lied to him about the purpose of the hearing is belied by the record, including not only Mr. Knights' testimony but also the hearing notice and motions on file.  (<u>See</u> doc. no. 11-9, pp. 192, 199-205; doc. no. 11-10, p. 60 (explaining Mr. Knights had filed several motions, "including the ones we were to hear today").)  Additionally, Petitioner's claim of being rushed and pushed into pleading guilty is refuted by Mr. Knights' testimony concerning spending all morning going over the plea with Petitioner and "constantly" discussing since May 7, 2013, the State's last plea offer, which is the offer Petitioner ultimately accepted.  (Doc. no. 11-9, pp. 23, 32-35.)  Petitioner's claim is also belied by Petitioner's sworn affirmation to the judge during the plea colloquy that he had reviewed the guilty plea in detail with Mr. Knights and had not been pressured into pleading guilty, as well as his written confirmation of the same.  (Doc. no. 11-9, p. 209; doc. no. 11-10, pp. 50, 57.)  Moreover, even if Petitioner had shown Mr. Knights hid the true purpose of the October 3, 2013 hearing from him - which he has not - Petitioner has not shown he would have rejected the plea deal to which he agreed and insisted on going to trial.

Petitioner has not raised a federal claim that his plea was not knowing and voluntary. (See doc. no. 1, p. 5.)  Notably, however, the state habeas court twice concluded in its written opinion that Petitioner "failed to show that his decision to enter a plea was not freely, knowingly, or voluntarily entered or was a result of coercion."  (Doc. no. 11-5, pp. 4, 11.) Petitioner offers nothing in these federal proceedings challenging these findings, let alone establishing the state court decision was "objectively unreasonable" under the applicable AEDPA deference.  Wiggins, 539 U.S. at 520-21; see also Part III(A)(2)(b) & (4)(a)(ii), *supra* (describing sworn oral and written affirmations by Petitioner to trial judge his understanding of rights waived by guilty plea, as well as confirming he had not been pressured in to pleading guilty, and identifying trial judge's multiple rulings at change of plea and in subsequent post-plea orders on motions that Petitioner entered knowing and voluntary guilty plea); (doc. no. 11-10, pp. 50-61 (memorializing guilty plea colloquy and concluding Petitioner "freely, voluntarily, and understandingly entered" guilty plea).  Accordingly, even if Petitioner had raised a federal claim about the knowing and voluntary nature of his guilty plea, the record does not show any merit to such a claim.

In sum, the state court's decision to reject this ineffective assistance claim concerning the purpose of the October 3rd hearing was not an unreasonable application of Strickland or Hill, or based on an unreasonable determination of the facts in light of the evidence presented. The claim in Ground Three(a) provides no basis for federal habeas corpus relief.

> **b.** **The State Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground Three(b) Was Not Objectively Unreasonable**

In Ground Three(b), Petitioner argues he received ineffective assistance because Mr. Knights misled him about his ability to obtain a more favorable plea offer from the State. Petitioner maintains that he had been offered a sentence of twenty years with only ten to be served in prison but did not accept the offer because Mr. Knights said he could "get [him] a better deal." (Doc. no. 11-9, pp. 31-32.) The state habeas court found this claim lacked merit under <u>Strickland</u>, concluding Petitioner had not shown, as required by <u>Hill</u>, he would not have pled guilty and insisted on going to trial but for the actions of Mr. Knights regarding the terms of the plea deal. (Doc. no. 11-5, pp. 5-6.)

### i.      Background

Mr. Knights testified the State never offered the sentence of twenty years in prison, serve ten, that Petitioner now asserts he turned down because Mr. Knights said he could obtain a better sentence. Rather, Mr. Knights testified Petitioner informed him his "bottom-line deal would be a fine, to be banished from the county, long term probation. The DA would never have to worry about hearing from [Petitioner], detention or county camp and 20 to serve two." (Doc. no. 11-9, pp. 33-34.) Mr. Knights told Petitioner that proposal was unrealistic but he would ask the State about it, as well as ask for twenty to serve ten, but the offer was rejected. (<u>Id.</u>) Mr. Knights further explained the State made its final offer on May 7, 2013, which was the agreement Petitioner ultimately accepted on October 3, 2013:  serve twenty years for voluntary manslaughter, followed by five years for possession of a firearm.  (<u>Id.</u> at 34.) Mr. Knights clarified that whatever he asked on Petitioner's behalf was not an offer.  (<u>Id.</u> at 33.)

25

### ii.      Analysis

The state habeas court determined Petitioner did not satisfy the <u>Strickland</u> standard because he could establish neither deficient performance by Mr. Knights, nor prejudice under <u>Hill</u> by showing he would have rejected the plea offer and insisted on trial.  (Doc. no. 11-5, pp. 4-6.)  Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." <u>Woods</u>, 136 S. Ct. at 1151.  In conducting its analysis, the Court is mindful that because Petitioner is challenging a state court ruling that rests on findings of fact, he must clear two hurdles:  (1) rebut the presumption of correctness that attaches to the findings of fact by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1); and (2) overcome the deference owed to the state court's legal decision under § 2254(d).  <u>Whatley v. Warden, Ga. Diagnostic & Classification Ctr.</u>, 927 F.3d 1150, 1175 (11th Cir. 2019).

In making its ruling, the state habeas court concluded Mr. Knights had "discussed several offers with the district attorney but the State's offer remained firm at twenty years to serve on voluntary manslaughter."  (Doc. no. 11-5, p. 6 (citing 11-9, p. 33).)  Mr. Knights also explained that at Petitioner's request, he asked for a deal of twenty years to serve ten, but the offer was rejected.  (<u>Id.</u>)  Petitioner offers nothing, let alone clear and convincing evidence, to contradict these facts underlying the state habeas court's application of <u>Strickland</u> to conclude Mr. Knights had not performed deficiently with respect to conveying the terms of the plea agreement to Petitioner.  Nor is there any evidence to contradict the conclusion Petitioner had not established prejudice.  Indeed, Petitioner never argues he would have insisted on going to

trial based on this alleged promise by Mr. Knights to get a better sentence, and the very offer Petitioner claims he rejected was never made by the State in the first place. Rather, the twenty to serve ten was a request from Mr. Knights that was rejected by the State. Petitioner offers no evidence in support of his argument than an even lesser sentence than the rejected offer of twenty to serve ten was promised by Mr. Knights or that his decision to plead guilty was impacted by this alleged promise.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or Hill, or based on an unreasonable determination of the facts in light of the evidence presented. The claim in Ground Three(b) provides no basis for federal habeas corpus relief.

### B.     Petitioner's Belated Motion to Amend Should Be Denied

After the petition had been fully briefed and a recommendation to reject all of Petitioner's claims had been issued, Petitioner filed a motion to amend his petition to add two new claims. (Doc. no. 19.) Respondent opposes the motion. (Doc. no. 20.) As explained below, the motion is untimely, without merit, and should be denied.

### 1.     Standard for Amending

The Federal Rules of Civil Procedure apply to proceedings for habeas corpus "to the extent that the practice in those proceedings:  (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). Similarly, Rule 12 of the Rules Governing § 2254 Cases provides that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be

27

applied to a proceeding under these rules."  Furthermore, the Supreme Court has repeatedly held Federal Rule of Civil Procedure 15 applicable to requests to amend habeas petitions.  See Mayle v. Felix, 545 U.S. 644, 654 (2005) (citing 28 U.S.C. § 2242); Banks v. Dretke, 540 U.S. 668, 704-05 (2004). Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

Under Rule 15(a)(1), a party may amend his pleading once as a matter of course within twenty-one days after service, or if the pleading requires a responsive pleading, twenty-one days after service of that responsive pleading or Rule 12 motion.  Otherwise, a party may only amend with the opposing party's written consent or permission from the Court.  Fed. R. Civ. P. 15(a)(2).  Petitioner's motion to amend - filed after the original petition had been fully briefed and a recommendation to deny all claims therein issued – falls under the rubric of Rule 15(a)(2).  Respondent does not consent, and thus the Court turns to its determination on whether Petitioner's amendment should be allowed.

As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely.  Foman v. Davis, 371 U.S. 178, 182 (1962); Wedemeyer v. Pneudraulics, Inc., 510 F. App'x 875, 878 (11th Cir. 2013) (per curiam).  That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it."  Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008).  "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment."  Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005) (per curiam) (quoting Foman, 371 U.S. at 182).

28

As one court has explained in the context of affirming the denial of a request to amend in a § 2255 case,[8] a petitioner who "has had ample opportunity to present his case to the Court . . . cannot simply raise new claims as they occur to him." United States v. Burbage, 280 F. App'x 777, 782 (10th Cir. 2008); cf. McCleskey v. Zant, 499 U.S. 467, 485 (1991) ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." (citation omitted)). This is particularly true where a party has been put on notice that his claims are meritless and then attempts to introduce new theories of obtaining relief. See Andrx Pharms., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1236-37 (11th Cir. 2005). Moreover, a motion to amend that seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief. See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (ruling that futility includes proposed amendments that fail as a matter of law); Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). Because the proposed new claims are untimely and/or cannot form the basis for relief, the motion to amend should be denied.

### 2.    Petitioner's Proposed New Claims Are Untimely

When Petitioner filed his original petition, Judge Hyles entered an order on March 8, 2020, instructing Petitioner to "amend his petition to include every unalleged possible constitutional error or deprivation entitling him" to relief, and if Petitioner failed to file an

---

[8] Case law issued with respect to § 2254 and § 2255 cases is generally applicable to either type of case. See Reed v. Farley, 512 U.S. 339, 354-55 (1994); Lynn v. United States, 365 F.3d 1225, 1242-44 (11th Cir. 2004).

amendment within those thirty days, he would "be presumed to have deliberately waived his right to complain of any constitutional errors or deprivations other than those set forth in his initial habeas petition."  (Doc. no. 4, p. 1.)  Petitioner did not file an amendment during the allotted thirty days, and instead waited until after Judge Hyles had analyzed the pending claims and recommended the petition be denied.

Even if the Court were to somehow excuse compliance with the 30-day deadline, the Court would still conclude Petitioner unduly delayed filing his request to amend by waiting until nearly four months after Respondent filed an answer to the petition and over two months after Judge Hyles had recommended all claims be denied.  Petitioner offers no reason why his claims could not have been raised in his original petition or within the time limit set by Judge Hyles.  His first proposed new claim asserts he was improperly charged with possession of a firearm during the commission of a crime, a claim clearly known to him since he was first indicted in 2012.  The second proposed new claim complains Mr. Knights wrongly told Petitioner on October 3, 2013, he was not eligible for a First Offender sentence, a claim apparently known to him since at least 2013.[9]

### 3.   Petitioner's Proposed New Claims Are Without Merit

Even if the proposed new claims had been timely raised, and even without consideration of whether the proposed claims were properly exhausted in state court as

---

[9]Petitioner states he found out "after he was sentence[d]" he could have been sentenced as a first offender, but provides no additional details.  (Doc. no. 19, p. 2.)  In any event, Petitioner provides no explanation why he could not have timely raised the claim in his original federal petition filed six years after his October 2013 sentencing.

required by AEDPA,[10] they provide no basis for relief.  As discussed in detail above, under the applicable <u>Strickland</u> standard, Petitioner must show not only deficient performance by Mr. Knights, but also prejudice.  He can show neither with respect to his proposed claims.

As to the first proposed new claim, Petitioner asserts Mr. Knights should have challenged the viability of the firearms charge to which he pled guilty because he had a valid license to carry a firearm on the day he shot his wife.  Petitioner pled guilty to possession of a firearm during the commission of a crime.  O.C.G.A. § 16-11-106 prohibits possession of a firearm or knife during the commission of, or attempt to commit, certain crimes including any crime against another person as separately charged against Petitioner.  Thus, whether Petitioner had a valid license to possess a firearm on the date of the events in question has no relevance to whether he was properly charged with possession of firearm during the commission of a crime.  Mr. Knights' failure to raise an irrelevant argument was not deficient, and there can be no prejudice in failing to raise a meritless claim.  <u>See</u> <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992).

---

[10]Absent a showing of cause and prejudice to correct a fundamental miscarriage of justice, a claim not exhausted in the state courts cannot form the basis for federal habeas corpus relief. <u>See</u> <u>Jones v. Campbell</u>, 436 F.3d 1285, 1304 (11th Cir. 2006); <u>see also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."); <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 457 (11th Cir. 2015) ("Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'").  Petitioner has not argued, or shown, he raised these proposed new claims in state court.  Nor has he has acknowledged, let alone established he can satisfy, the cause and prejudice standard, or that a fundamental miscarriage of justice will occur if these proposed new claims - for which he has known the basis for years - were to be rejected based on a failure to exhaust.

As to the second proposed new claim, Petitioner asserts Mr. Knights erroneously told him he did not qualify for sentencing under the First Offender Act, O.C.G.A. § 42-8-60, which provides a defendant not previously convicted of a felony may be placed on probation rather than sentenced to prison, upon a guilty verdict or plea of guilty or nolo contendere.  Petitioner maintains, without explanation, he has proof he could have been sentenced as a first offender because he knows of another Emanuel County defendant who committed a crime "just like mine" who was sentenced as a first offender.  (Doc. no. 19, p. 2.)

Petitioner has provided absolutely no facts in support of his claim, either as to the absence of a prior felony record or as to a comparable Emanuel County defendant convicted of the same crimes who pleaded guilty based on a negotiated plea agreement that included a specific sentence recommendation.  See Barritt v. Sec'y, Fla. Dep't of Corr., 968 F.3d 1246, 1253 (11th Cir. 2020) (rejecting claim where petitioner never alleged facts that, if proven true, would entitle him to relief); see also Williams v. United States, No. 17-11060, 2017 WL 8223627, at *3 (11th Cir. Sept. 27, 2017) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) for proposition "petitioner is not entitled to federal habeas relief 'when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible'")).  Moreover, as detailed in Part III(A)(4)(b), the State's final offer for the plea deal - after several requests for a lesser sentence from Mr. Knights - was a total sentence of twenty-five years.  There is nothing in the record suggesting a first offender sentence was available in Petitioner's case.

For the sake of completeness, the Court notes Petitioner includes a statement in motion to amend referencing <u>Jackson v. Virginia</u>, and stating without explanation, "There is not sufficient evidence to support this prosecution." (Doc. no. 19, p. 2.) If Petitioner were trying to state a stand-alone claim challenging the sufficiency of the evidence, any such claim is untimely for all the reasons stated in Part III(B)(2). Likewise, any such claim cannot form the basis for federal habeas relief because of the lack of supporting information. <u>See Barritt</u>, 968 F.3d at 1253; <u>Tejada</u>, 941 F.2d at 1559. Finally, "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" <u>Class v. United States</u>, -U.S.-, 138 S. Ct. 798, 805 (U.S. 2018) (citations omitted).

During the plea colloquy, Petitioner admitted to shooting his wife seven times during a verbal altercation concerning allegations of unfaithfulness in the marriage. (Doc. no. 11-10, pp. 54-57.) As discussed in Parts III(A)(2)(b) & III(A)(4), the trial judge ruled multiple times Petitioner entered a knowing and voluntary guilty plea, thereby establishing Petitioner necessarily admitted the facts to support his convictions, not to mention commencement of the prosecution itself. Accordingly, any potential sufficiency of the evidence claim is without merit.

In sum, the motion to amend should be denied because it is untimely and the claims are without merit.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to amend be **DENIED**, (doc. no. 19), the § 2254 petition be **DENIED**, this civil action

be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 25th day of January, 2021, at Augusta,

Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA